**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **CRIMINAL NO. 21-00135-JB** |
| ) | |
| **SEGUNDO DARIO BRAVO LOPEZ** ) | |

## PLEA AGREEMENT

The defendant, **SEGUNDO DARIO BRAVO LOPEZ**, represented by his counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

### RIGHTS OF THE DEFENDANT

1. The defendant understands his rights as follows:

    a. To be represented by an attorney;

    b. To plead not guilty;

    c. To have a trial by an impartial jury;

    d. To confront and cross-examine witnesses and to call witnesses and produce other evidence in his defense; and

    e. To not be compelled to incriminate himself.

### WAIVER OF RIGHTS AND PLEA OF GUILTY

2. The defendant waives rights b through e, listed above, and pleads guilty to Count Two of the Indictment, charging a violation of 46 U.S.C. § 70503(a)(1), Possession with Intent to Distribute Cocaine on Board a Vessel.

3. The defendant understands that the statements he makes under oath in the plea of guilty must be completely truthful and that he can be prosecuted for making false

1

statements or perjury, or receive a perjury enhancement at sentencing, for any false statements he makes intentionally in this plea of guilty.

4. The defendant expects the Court to rely upon his statements here and his response to any questions that he may be asked during the guilty plea hearing.

5. The defendant is not under the influence of alcohol, drugs, or narcotics. He is certain that he is in full possession of his senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6. The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. He has discussed the facts of the case with his attorney, and his attorney has explained to the defendant the essential legal elements of the criminal charge which has been brought against him. The defendant's attorney has also explained to the defendant his understanding of the United States' evidence and the law as it relates to the facts of his offense.

7. The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charge beyond a reasonable doubt. The defendant and his counsel have discussed possible defenses to the charge. The defendant believes that his attorney has represented him faithfully, skillfully, and diligently, and he is completely satisfied with the legal advice of his attorney.

8. The defendant consents to removal from the United States following completion of his sentence, to waive rights relating to all forms of relief from removal or exclusion, to abandon any pending applications for such relief, and to cooperate with the Department of Homeland Security during removal proceedings.

9. A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that the Factual Resume is true and correct. Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and his counsel are not part of this agreement and are not agreed to by the United States.

10. This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement. There have been no promises from anyone as to the sentence that the Court will impose. The defendant is pleading guilty because he is guilty.

11. The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter. This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

## **PENALTY**

12. The maximum penalty the Court could impose as to Count Two of the Indictment is:

    a. Life imprisonment, with a mandatory minimum sentence of 10 years imprisonment;

    b. A fine not to exceed $10,000,000;

    c. A lifetime term of supervised release following any term of imprisonment, with a term of supervised release of at least 5 years. If the defendant violates

the conditions of supervised release, he could be imprisoned for the entire term of supervised release;

d. A mandatory special assessment of $100.00; and

e. Such restitution as may be ordered by the Court.

## SENTENCING

13. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with his attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that he will not be allowed to withdraw his guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing

information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $100.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of his sentencing.

## RESTITUTION

18. Pursuant to 18 U.S.C. §§ 3556 and 3663(A), restitution is mandatory. The defendant agrees to make full restitution as to all relevant conduct regardless of whether it relates to the count of conviction.

## FORFEITURE

19. The defendant agrees to confess the forfeiture to the United States of all properties which represent proceeds of his criminal activities or which facilitated any aspect of these illegal activities.

## FINANCIAL OBLIGATIONS

20. The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court. To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the defendant agrees to disclose fully all assets in

which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

## UNITED STATES' OBLIGATIONS

21. The United States will not bring any additional charges against the defendant related to the facts underlying the Indictment and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22. The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

23. As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge his guilty plea, conviction, or sentence in any district court or appellate court proceedings.

    a. **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

    (1) any sentence imposed in excess of the statutory maximum;

            (2)      any sentence which constitutes an upward departure or variance from the advisory guideline range.

      The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

24. If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

25. The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

26. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

27. The defendant understands that if he breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that he might have under the Sixth Amendment and/or Speedy Trial Act.

28. In addition, if the defendant is released from detention prior to sentencing, he understands that the United States will no longer be bound by this agreement if he

violates any condition of his release prior to sentencing or prior to serving his sentence after it is imposed.

## ENTIRETY OF AGREEMENT

29. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: October 28, 2021

Sinan Kalayoglu
Assistant United States Attorney

Date: October 28, 2021

George A. Martin, Jr.
George A. Martin, Jr.
Assistant United States Attorney
Deputy Chief, Criminal Division

I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Indictment pending against me. I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand this agreement, and I voluntarily agree to it. I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date:_____            _____
                                Segundo Dario Bravo Lopez
                                Defendant

    I am the attorney for the defendant. I have fully explained his rights to him with respect to the offenses charged in the Indictment in this matter. I have carefully reviewed every part of this Plea Agreement with him. To my knowledge, his decision to enter into this agreement is an informed and voluntary one. I have carefully reviewed the Factual Resume, incorporated herein, with the defendant and to my knowledge, his decision to stipulate to the facts is an informed, intelligent, and voluntary one.


Date:_____            _____
                                Carlos A. Williams
                                Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 21-00135-JB |
| | ) |
| SEGUNDO DARIO BRAVO LOPEZ | ) |

## FACTUAL RESUME

The defendant, **SEGUNDO DARIO BRAVO LOPEZ ("LOPEZ")**, admits the allegations of Count Two of the Indictment.

## ELEMENTS OF THE OFFENSE

**LOPEZ** understands that to prove a violation of 46 U.S.C. § 70503(a)(1), as charged in Count Two of the Indictment, the United States must prove:

1. The defendant was on board the vessel involved in this case;

2. The defendant knowingly possessed cocaine;

3. The defendant intended to distribute the cocaine; and

4. The weight of the cocaine was more than 5 kilograms.

## OFFENSE CONDUCT

**LOPEZ** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **LOPEZ's** plea of guilty. The statement of facts does not contain each fact known to **LOPEZ** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, amounts, and locations provided below are approximations.

1

On June 24, 2021, a U.S. Maritime Patrol Aircraft ("MPA") belonging to the United States Coast Guard ("USCG") was on routine patrol in the North Pacific Ocean and detected a suspect vessel operating in international waters 260 nautical miles south of Guatemala's border with Mexico. USCG Cutter 'Dauntless' ("Dauntless") diverted to intercept, closed in on the suspect vessel, and launched its response assets to observe and contact the suspect vessel. The MPA obtained a visual of the suspect vessel and remained covert while the USCG 'Over the Horizon' vessel ("Over the Horizon") approached the suspect vessel. The MPA then went overt and issued warning shots to the suspect vessel. Over the Horizon approached the suspect vessel for interdiction while the MPA issued disabling fire. Over the Horizon gained control of the suspect vessel. Dauntless reported that three to four large packages were possibly jettisoned during the pursuit and that additional packages were visible on the suspect vessel's deck. The suspect vessel yielded painted on marks consisting of four white stars with blue and red stripes on the port and starboard hull, and two 12" x 18" stickers on the port and starboard quarter consisting of red, yellow, and blue horizontal stripes.

The two crewmembers onboard the suspect vessel – codefendant Walther Dagoberto Vera Quijije and **LOPEZ** – claimed Ecuadorian nationality for the vessel and claimed themselves to be Ecuadorian citizens or nationals. Thus, the Coast Guard enacted protocols and commenced a forms exchange. Ecuador responded to the forms exchange and could neither confirm nor deny the vessel's nationality. With this information, Dauntless was authorized to treat the vessel as without nationality and conduct a full law enforcement boarding. The United States had jurisdiction over the suspect vessel since it was a vessel without nationality.

Tests conducted on the port beam and deck void of the suspect vessel returned positive results for cocaine. Two narcotics identification kit tests were used on the packages on the suspect vessel's

deck. Both tested positive for cocaine. The USCG's boarding team discovered additional cocaine secreted in a false deck approximately five feet wide and eighteen inches deep running from the bow to the stern of the suspect vessel. At this point, Dauntless was authorized to treat codefendant Walther Dagoberto Vera Quijije and **LOPEZ** as detainees and embark them onboard the cutter. Members from Dauntless completed the boarding and seized 863 kilograms of cocaine from the suspect vessel, as later confirmed by a toxicology report.

Ultimately, on June 24, 2021 **LOPEZ** was on board the suspect vessel. He knowingly possessed the 863 kilograms of cocaine with intent to distribute it.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: October 28, 2021

Sinan Kalayoglu
Assistant United States Attorney

Date: October 28, 2021

George A. Martin, Jr.
George A. Martin, Jr.
Assistant United States Attorney
Deputy Chief, Criminal Division

Date:

Segundo Dario Bravo Lopez
Defendant

Date:

Carlos A. Williams
Attorney for Defendant